## A11A1530. LAKES v. THE STATE.

(722 SE2d 859)

BOGGS, Judge.

Corey Lakes appeals from his convictions for robbery, kidnapping, rape, aggravated sodomy, financial transaction card theft, and identity fraud. He contends he is entitled to a new trial because the trial court erred by: (1) admitting a similar transaction; (2) denying his motion for a mistrial; (3) giving an inapplicable jury charge on intoxication of a rape victim; and (4) denying his claim of ineffective assistance of counsel. He also asserts that prosecutorial misconduct entitles him to a new trial. For the reasons explained below, we find no merit in these assertions and affirm.

Viewed in the light most favorable to the verdict, the record shows that on July 27, 2007, the victim and her brother were searching for their parked car after leaving a club in downtown Atlanta around 1:30 or 2:00 a.m. A witness described both of them as obviously drunk. The victim kept falling over and stopping, with her brother urging her to get up. The witness helped them find their car, along with four other men who insisted on helping as well. After the victim entered the passenger seat and her brother got into the driver's seat, the witness started to walk away. When he heard a scream, he turned around and saw one of the four men "trying to force himself in the front passenger seat." The brother drove the car in an attempt to escape, but stopped near the entrance to an underground mall in the hope of finding help. He got out of the driver's seat and attempted, with the help of the witness, to pull the man out of the car. A second man then jumped into the driver's seat and drove away with the victim and the man in the passenger seat. The brother was dragged several feet by the car until he fell off and broke his finger. While calling and talking with a 911 operator, the brother and the witness ran behind the car until they could not see it anymore. Police officers arrived six minutes after the brother lost sight of the car.

The victim testified that after her brother fell off the car, she was taken by the two men onto the interstate for about 15 minutes while

the two men "were screaming between each other asking [her] for money." After the men took $10 and her ATM card, the driver asked the other man to get out of the car after exiting the highway. The driver then took the victim to a drive-through ATM where he used her pin number to withdraw $100. Next, he drove to a gas station, where he asked someone standing outside to buy condoms and a pack of cigarettes. Afterward, he drove to the driveway of an abandoned house where he threatened to shoot the victim if she did not perform oral sodomy on him. He forced the victim to perform oral sodomy and then raped her. After ejaculating on her skirt and shirt, the man "started getting paranoid and told [her] to take everything off and he was wiping [her] down [with her brother's shirt] and just acting crazy." He threw her clothes out of the window and drove away. When her cell phone started ringing and a car pulled up nearby, he told the victim to get out of the car with her phone and clothes from her brother's bag and drove away. The victim ran to the man in the other car and called the police. The victim testified that although she was intoxicated, she was certain "he forced himself onto [her]."

Police investigating the crime learned that someone was using the victim's ATM card after the rape. At one location where it was used, the police were able to review the surveillance tape with the store owner, who identified the man using the ATM card as a regular customer named Corey. The police issued a warrant for Lakes' arrest. During the execution of the arrest warrant, Lakes engaged police in a high-speed chase ending in an accident before his arrest. The store owner testified at trial and identified Lakes as the man he knew as Corey who had used the ATM card.

Detectives found the victim's shirt in the area where the rape occurred, and DNA in semen found on the shirt matched that of Lakes. The victim identified Lakes at trial as the man who drove her brother's car and raped her. The witness who helped the victim and her brother find their car also identified Lakes in a photographic lineup and at trial.

A similar transaction witness testified that on December 24, 2006, seven months before the rape at issue in this case, she and her boyfriend went to a club where they drank a lot of alcohol. She testified that she was kicked out of the club around 1:00 or 2:00 a.m. after tripping a couple of times and that her boyfriend remained inside to close out the tab. The next thing she remembered was waking up in her car with a man who removed her clothing, threatened to kill her with a gun, and forced her to perform oral sodomy. When he stopped at a convenience store and got out of the car, she ran to a payphone and called 911. The witness acknowledged there were periods of time that evening in which she did not know what happened because she had too much to drink. Police subse-

quently arrested Lakes on January 8, 2007, while he was in possession of the similar transaction victim's car, which had been reported stolen. At the time of trial, Lakes had not been charged or arrested for any sexual offenses in the similar transaction case.

The State presented testimony that rape kit evidence was collected from the similar transaction victim and that police learned in May 2007 that "the evidence from the victim's rape kit came back with some DNA evidence." Police obtained a search warrant to obtain a buccal swab for the purpose of collecting DNA from Lakes. The record shows that the rape kit evidence collected from the similar transaction victim, along with the buccal swab from Lakes, were submitted to the GBI for DNA testing. Although the GBI was not provided with a known DNA sample from the victim, a forensic biologist determined that it was Lakes' DNA on the rectal swab from the similar transaction victim's rape kit.

1. We find no merit in Lakes' claim that the trial court erred by allowing the State to introduce evidence regarding the similar transaction. The procedural guidelines for admitting similar transaction evidence are well established. *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009). Generally, "evidence of independent offenses committed by a defendant is irrelevant and inadmissible in a trial for a different crime." Id. In some cases, however, evidence of similar crimes can be admitted if "its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, outweighs its prejudicial impact." (Citation and punctuation omitted.) Id. Before admitting evidence of prior crimes,

> the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

Id. "Particularly in the area of sexual offenses, the admissibility of similar transaction evidence is liberally construed. Evidence of an earlier assault on a woman is material to the issue of consent or the lack thereof, and has a direct bearing on appellant's bent of mind." (Citation and punctuation omitted.) *Brooks v. State*, 230 Ga. App. 846, 847 (1) (498 SE2d 139) (1998).

In this case, the similarities are pronounced. Both women were intoxicated after leaving a club and sexually assaulted while in their own cars. Both women were forced to perform oral sodomy after

being threatened with being shot. Lakes was later found in possession of the cars belonging to both victims, and the incidents happened seven months apart. The trial court did not err by admitting the similar transaction evidence to show Lakes' state of mind or intent. See *Breland v. State*, 287 Ga. App. 83, 84-86 (1) (651 SE2d 439) (2007).

2. Lakes contends the trial court should have granted his motion for a mistrial based upon the following portion of the State's opening statement regarding the similar transaction victim:

> He kept her car, not for one day, not for two days, but for at least ten days, driving around DeKalb County like it was his car. You will hear that he is at the Wal-Mart, and he gets in trouble at the Wal-Mart. The police then follow him to the car where he admits to what happened at the Wal-Mart, . . . They run the tags and they realize that it is a carjacking and a rape case that the car is involved in. They take him in.

Lakes' counsel did not make a contemporaneous objection, but instead waited until the conclusion of the State's opening to move for a mistrial on the ground that the State put his character in issue for a shoplifting offense that he was never charged for and that the State "implied to the jury that he is being charged for this other alleged rape. . . ." The trial court denied the motion.

"[A] defendant must timely object to the alleged impropriety in opening argument so that the trial court can take remedial action, if any is warranted. Having failed to assert a contemporaneous objection, [Lakes] has waived his right to complain about the remarks on appeal." (Citations, punctuation and footnote omitted.) *Brooks v. State*, 284 Ga. App. 762, 764 (644 SE2d 891) (2007). See also *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001) (objection to improper closing argument must be made during closing argument, not at conclusion of argument). Additionally, even if the error were somehow preserved for our review, the overwhelming evidence of Lakes' guilt renders any error harmless. *Brooks*, supra.

3. Lakes asserts that the trial court erred by giving the following unrequested charge to the jury: "Sexual intercourse with a woman whose will is temporarily lost from intoxication or unconsciousness arising from the use of drugs or other cause or sleep is rape." While the trial court may have erred by giving an inapplicable charge, "in the context of the issues being tried and of the evidence as a whole, we hold that the charge was harmless — i.e., that it is highly probable that it did not contribute to the verdict." *Gober v. State*, 203 Ga. App. 5, 7-8 (7) (416 SE2d 292) (1992) (trial court's error in giving charge on intoxication of victim in rape case harmless), disapproved

on other grounds, *Morgan v. State*, 267 Ga. 203, 204-205 (2) (476 SE2d 747) (1996) (disapproving Division 5), overruled on other grounds, *Dudley v. State*, 273 Ga. 466, 468, n. 4 (542 SE2d 99) (2001) (overruling Division 1). See also *Stover v. State*, 293 Ga. App. 210, 213-214 (1) (b) (666 SE2d 602) (2008) (trial court's error in charging on presumption of force against child harmless in light of overwhelming evidence of defendant's guilt in rape case).

4. Lakes maintains that he is entitled to a new trial based upon prosecutorial misconduct in soliciting testimony from a law enforcement officer that after Lakes denied committing the rape of the similar transaction victim, he admitted to being "a pimp." We cannot consider this claim, however, because Lakes failed to object. "The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." (Citation and punctuation omitted.) *Sanders v. State*, 289 Ga. 655, 659 (2) (715 SE2d 124) (2011).

5. Lakes asserts nine grounds of ineffective assistance of counsel. In order

> to prevail on a claim of ineffective assistance of trial counsel, Appellant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. With respect to the first requirement, Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Martinez v. State*, 289 Ga. 160, 161 (2) (709 SE2d 797) (2011). In order to show the requisite prejudice, Appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Miller v. State*, 285 Ga. 285, 285-287 (676 SE2d 173) (2009). "When reviewing an ineffective assistance claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Gandy v. State*, 290 Ga. 166, 170 (4) (718 SE2d 287) (2011). See also *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (clarifying that clearly erroneous standard applies solely to trial court's factual findings and that no deference owed to trial court's legal conclusions).

We have carefully reviewed the trial transcript and the motion for new trial transcript and have determined that ample evidence supports the trial court's finding that Lakes did not carry his burden of proving ineffective assistance.

(a) Lakes' claim with regard to his counsel's failure to move for

a mistrial based upon the admission of the similar transaction evidence has no merit. The trial court did not err by admitting this evidence for the reasons stated in Division 1 of this opinion. "Trial counsel's failure to pursue a meritless motion does not constitute ineffective assistance of counsel." *Boatright v. State*, 308 Ga. App. 266, 269 (1) (a) (707 SE2d 158) (2011). See also *Lupoe v. State*, 284 Ga. 576, 579-580 (3) (f) (669 SE2d 133) (2008).

(b) Lakes contends that trial counsel failed to timely object to the emergency room doctor's testimony that victims "tell us their story and we discuss with them the procedures if they decide that they would like to go further and press charges. Then we proceed with the rape kit." The record shows that the doctor provided this testimony when answering the State's question about her "procedures in examining a patient of an *alleged* assault[.]" (Emphasis supplied.) Outside the presence of the jury, counsel objected and moved for a mistrial based on the witness talking about a victim pressing charges. The trial court sustained her objection, but denied her motion for a mistrial, and counsel did not ask for a curative instruction. In the motion for new trial hearing, trial counsel testified that she usually does not ask for a curative instruction because "it just draws attention to bad things."

This claim of ineffective assistance has no merit because the record shows that counsel objected and then made a strategic decision not to seek a curative instruction. This "decision not to get curative instructions was part of a legitimate trial strategy and is within the range of reasonable professional conduct." *Cross v. State*, 271 Ga. 427, 432 (3) (b) (520 SE2d 457) (1999). See also *Stillwell v. State*, 294 Ga. App. 805, 807-808 (2) (b) (670 SE2d 452) (2008).

(c) Lakes maintains that his trial counsel should have objected when the prosecutor referred "to the alleged kidnapping as being a foregone conclusion." According to Lakes, this statement constituted a comment on the ultimate issue of whether the victim was kidnapped. We have reviewed the portion of the record relied upon by Lakes and agree with trial counsel's assessment in the motion for new trial hearing that the prosecutor's question did not treat the kidnapping as a "foregone conclusion." And, contrary to Lakes' assertions, this question simply cannot be construed as a comment upon the ultimate issue, and it did not inject the prosecutor's personal opinion of guilt into the case. Compare *Mangrum v. State*, 285 Ga. 676, 679 (4) (681 SE2d 130) (2009) (witness generally not permitted to express opinion regarding ultimate issue in case); *Carruthers v. State*, 272 Ga. 306, 311 (3) (a) (528 SE2d 217) (2000) ("prosecutor may not express his or her personal opinion in closing argument"), overruled on other grounds, *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008).

Additionally, the record shows that counsel asserted a relevance objection to the investigator's response that was sustained by the trial court. We find no merit in this portion of Lakes' ineffective assistance claim because he has failed to meet his burden of demonstrating deficient performance on the part of his trial counsel.

(d) We find no merit in Lakes' claim of ineffectiveness based upon his counsel's failure to seek a curative instruction after the trial court sustained her objection to a detective's testimony that this was a "tough incident" and "the kind a detective does not want to deal with." Trial counsel's decision not to seek a curative instruction was strategic and does not amount to ineffective assistance of counsel in this case. See *Cross*, supra, 271 Ga. at 432 (3) (b); *Stillwell*, supra, 294 Ga. App. 807-808 (2) (b).

(e) In his remaining claims of ineffective assistance, Lakes contends his counsel deficiently performed by failing to object properly to the following testimony: (i) the emergency room doctor beginning her description of a rape exam with the statement: "When a patient comes in that's been the victim of a sexual assault"; (ii) a police officer testifying about his expressions of sympathy for the victim during her outcry statement; (iii) a police officer using the word rape when he described a transfer of the case to another police unit "because there was a rape involved"; (iv) the prosecutor asking a police officer whether he considered himself "a good homicide detective" and the officer responding, "I'm very proud of what I do, yes"; and (v) a police officer testifying that Lakes referred to himself as a pimp. After carefully reviewing the record and the merits of each particular claim of ineffective assistance, we find that even if we were to assume that Lakes' trial counsel deficiently performed by failing to object as outlined above, he cannot meet his burden of proving that prejudice resulted from such performance based upon the overwhelming evidence against him. See *Bridges v. State*, 286 Ga. 535, 540 (5) (690 SE2d 136) (2010) (finding no prejudice resulted from counsel's failure to object to ultimate issue testimony); *Frazier v. State*, 263 Ga. App. 12, 16 (3) (c) (587 SE2d 173) (2003) (finding no prejudice from counsel's failure to raise ultimate issue objections to officer's testimony that money in pocket of defendant belonged to the victim); *Love v. State*, 305 Ga. App. 573, 573-574 (699 SE2d 872) (2010) (overwhelming evidence precluded finding of prejudice from counsel's deficient performance in introducing client's criminal history).

*Judgment affirmed. Mikell, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 7, 2012.

*Dell Jackson*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.